## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KROLL LLC, | **Civil Action No.** |
| *Plaintiff,* | |
| v. | |
| ANNA POVINELLI, | **COMPLAINT** |
| *Defendant.* | |

Plaintiff, Kroll LLC ("Kroll"), by and through its attorneys, Greenberg Traurig, LLP, hereby complains of the Defendant, Anna Povinelli, and states and alleges as follows:

## NATURE OF ACTION

1.      Through this action, Kroll seeks to protect and recover its trade secrets and its confidential and proprietary information which Defendant misappropriated. Kroll further seeks to recover monetary damages suffered as a direct result of Defendant's misappropriation.

2.      Kroll is engaged in the business of corporate investigations and risk and financial consulting. Salient to this action, Kroll provides compliance consulting and related services to its customers, which involves highly confidential and sensitive information. Kroll provides these services through its employees, such as Defendant.

1

3.     Kroll seeks the Court's assistance in maintaining the status quo by preventing Defendant from further misappropriating and wrongfully using for her own benefit Kroll's sensitive, confidential and proprietary information. Kroll further seeks the Court's assistance in enjoining Defendant from using Kroll's proprietary, trade secret information to harm Kroll's business. Kroll further seeks the Court's assistance in retrieving the confidential and proprietary information that Defendant unlawfully retained, all in direct violation of applicable fiduciary obligations, the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), and New York state law.

4.     In addition to injunctive relief, Kroll also seeks monetary damages resulting from the loss of customers and profits due to Defendant's unlawful behavior, and disruption and other consequential damages caused by Defendant's illegal activities, and attorneys' fees and costs related to this litigation.

5.     Kroll brings this action to finally put a stop to Defendant's unlawful behavior, and to recover the substantial damages that behavior has caused and continues to cause Kroll to suffer.

## THE PARTIES

6.     Plaintiff Kroll is a foreign limited liability company duly existing under the laws of the State of Delaware in the business of corporate investigations and risk and financial consulting and headquartered at 55 East 52nd Street, Floor 17, New York, NY 10055.

7.     Kroll is informed and believes that Defendant resides in Old Greenwich, CT. Kroll employed Povinelli from approximately January 2015 until March 2024, when Kroll terminated Defendant's employment due to the misconduct described herein.

ACTIVE 695962582v2

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States (specifically, the Defend Trade Secrets Act, 18 U.S.C. § 1836).

9.      The Court has supplemental jurisdiction over Kroll's state law claims pursuant to 28 U.S.C. § 1367(a).

10.      The Court has personal jurisdiction over Defendant because, at all times relevant to this action, she worked in the State of New York, and engaged in the wrongful conduct described in this Complaint in the State of New York. Povinelli thus has sufficient minimum contacts with the State of New York to vest this Court with personal jurisdiction.

11.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this legal action occurred in the County of New York.

## FACTUAL BACKGROUND
## KROLL'S HIGHLY SPECIALIZED AND COMPETITIVE BUSINESS

12.      Competition within Kroll's industry is fierce, and highly sensitive to price, quality, service level, and Kroll's ability to keep client information and its own intellectual property confidential.

13.      Kroll has spent considerable time, resources, efforts, and money to ensure that its confidential information and trade secrets remain protected. Kroll takes specific measures to preserve the confidentiality of this information.

ACTIVE 695962582v2

14.     For example, Kroll shares its confidential information and trade secrets with a limited group of employees (the "Limited Disclosure Group") and on a need-to-know basis. Further, Kroll's confidential information and trade secrets are not disclosed outside the internal team structures to third parties, including within the firm, unless there is a legitimate need to know, as well as a strict confidentiality agreement in place.

15.     Kroll has also implemented protocols to protect its trade secrets and other confidential information including, but not limited to, establishing and disseminating policies pertaining to employee access and use of Kroll's confidential information, and encrypting and password protecting sensitive documents.

16.     One such policy, Kroll's Confidentiality Policy ("Confidentiality Policy"), holds all employees to strict confidentiality standards. The Confidentiality Policy acknowledges that employees will have access to confidential information about Kroll and its clients, and makes clear that protection of these trade secrets is vital to Kroll's success. Employees are trained on the importance of client confidentiality and Kroll's Code of Ethics annually and are required to act in line with these standards, with the annual training program coming with an obligation to confirm adherence to the policies.

17.     The Confidentiality Policy defines "Confidential Business Information" as information: "(1) That [Kroll] treats as confidential; (2) That [Kroll's] clients treat as confidential; (3) That gives [Kroll] a competitive advantage; or (4) That is not known to others engaged in the same or a similar business as [Kroll]; such as:

- pending projects and proposals;
- client lists;
- client information;
- vendor/supplier lists;
- administrative processes;
- financial information;

4

- research and development strategies;
- employee relations strategies;
- employee PII;
- technological data;
- marketing strategies and data;
- pricing strategies;
- business plans;
- technological prototypes; and
- new materials research.

18.     Further, the Confidentiality Policy stipulates that violations of these requirements "may result in corrective action up to and including termination of employment."

19.     In addition to the Confidentiality Policy, Kroll maintains a separate Acceptable Use of Assets Policy ("Use Policy"). Pursuant to the Use Policy, employees are prohibited from using personal non-Kroll email providers to create, send, receive, or store Kroll information. While exceptions to this policy may be permitted on a case-by-case basis, employees are required to seek prior approval dependent on whether there is a valid business justification, benefit to Kroll, availability of more secure options, and the risk posed to Kroll.

20.     As with Kroll's Confidentiality Policy, Kroll's Use Policy states that violations of the policy may result in corrective or adverse action, up to and including termination of employment.

## DEFENDANT'S EMPLOYMENT WITH KROLL

21.     Defendant was hired by Kinetic Partners on October 7, 2014. Kinetic Partners was acquired by Kroll in January 2015, at which time Povinelli was an Associate Director. She was later promoted to the role of Managing Director at Kroll.

ACTIVE 695962582v2

22.     As Managing Director in the Financial Services Compliance and Regulation service line ("FSCR"), Povinelli's duties included joint supervision of approximately 40 individuals in Kroll's U.S. offices and approximately 10 employees in Mumbai India. The team under Povinelli's supervision focused on compliance support and assistance with ongoing client projects.

23.     As a condition of her employment with Kroll, and because she was entrusted with Kroll's most important and confidential information, Povinelli was bound by the Confidentiality Policy and Use Policy, in addition to Kroll's annual training programs in which all employees acknowledge and agree to its policies.  Further, as a Managing Director, Povinelli owed Kroll a fiduciary duty.

24.     The nature of the consultancy service offering of Kroll's FSCR team, of which Povinelli was one of the senior leaders in the U.S., is such that Kroll advises participants in the financial services industry, notably the private funds sector, in regard to their regulatory and fiduciary duties and obligations. Therefore, Povinelli's conduct is all the more egregious given the nature of the advice she provided to clients on a daily basis, namely, consulting on client firms' policies and procedures and client firms' obligations to protect their clients' information.

25.     As stated above, Kroll's Confidential Policy and Use Policy both strictly prohibit employees from sending Kroll's confidential and proprietary information to their personal email accounts.

**DEFENDANT'S MISAPPROPRIATION OF KROLL'S TRADE SECRETS AND CONFIDENTIAL INFORMATION**

26.     In or about January 24, 2024, Kroll investigated the suspected theft of trade secrets by Povinelli. During the investigation, Kroll discovered that Povinelli sent numerous Kroll documents to her personal address.

ACTIVE 695962582v2

27.    For example, starting on or around September 1, 2023, unbeknownst to Kroll at that time, Povinelli sent more than sixty (60) documents from her Kroll email account to her personal email address, containing confidential and proprietary information and sensitive Kroll client information, including but not limited to:

     a.  Excel spreadsheets containing contact information and confidential details regarding current Kroll clients and prospective clients;

     b.  Proprietar client servicing documentation created by Kroll, some of which had been completed for clients and as such contained client sensitive and confidential data;

     c.  Training slide decks completed for Kroll clients;

     d.  Confidential client documents including, without limitation, agreements between clients and Kroll, revised client policies, confidential legal opinions obtained by clients during the course of business and documents pertaining to clients' corporate structures;

     e.  documents interpreting and explaining relevant regulations for the purpose of advising Kroll clients.

28.    The confidential information and trade secrets described above are not known to the public or even the majority of Kroll employees and are highly valuable to Kroll and its business. If a competitor, client, or Kroll employee not in the Limited Disclosure Group were to obtain this highly confidential information, they would gain an unfair commercial advantage to the detriment of Kroll.

ACTIVE 695962582v2

29.    All of this information was highly confidential and competitively sensitive. Povinelli had no legitimate business purpose for emailing these documents to her personal email account. Indeed, doing so violated Kroll's policies and procedures. The only conceivable reason for Povinelli to send these emails in such a surreptitious fashion was to masquerade her actions and make it more difficult for Kroll to detect her misconduct.

30.    This conduct was in direct violation of Kroll's policies and procedures, as well as her fiduciary duties, and has harmed and will continue to harm Kroll by jeopardizing the trade secret status of these confidential and proprietary documents.

**KROLL ENDEAVORS TO OBTAIN POVINELLI'S COMPLIANCE WITH HER CONTRACTUAL OBLIGATIONS AND POVINELLI CONTINUES TO OBFUSCATE AND MISREPRESENT**

31.    Having discovered that Povinelli misappropriated confidential and proprietary and trade secret information from Kroll, on February 1, 2024, Kroll sent Povinelli a letter reminding her of her ongoing obligations under Kroll policies and procedures. At this time, Kroll placed Povinelli on a paid leave to limit her access to proprietary information and her ability to continue her misappropriation of Kroll materials pending its investigation.

32.    In response, Povinelli stated she sent documents related to her performance to her personal email account because "you never know" how Kroll thinks about performance. Povinelli's purported explanation for her misconduct is plainly disingenuous and in no way explains why she sent confidential and proprietary and trade secret information to her personal email account. The misappropriation of the documents can in no way be related to any form of performance measurement. The documentation stolen by Povinelli, while relating to the FSCR practice, does not relate to her role within Kroll and can only have been taken for her personal gain outside of Kroll.

## FIRST CAUSE OF ACTION
### Misappropriation of Trade Secrets under the Defend Trade Secrets Act (DTSA)

33.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

34.     During the course of her employment at Kroll and in order to perform her duties on behalf of Kroll, Povinelli was granted access to Kroll's confidential and proprietary information.

35.     For example, Povinelli had access to Kroll's financial information, business information, plans and strategies, forecasts, know-how, systems, processes, models and strategies, client information, intellectual property, client servicing materials and additional confidential and proprietary information.

36.     The information described above constitutes a protectable trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832, et. seq., because Kroll derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839.

37.     As described above, Kroll's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.  Furthermore, Kroll has taken reasonable steps to maintain the secrecy of its trade secrets, as described above.

38.     Povinelli misappropriated Kroll's trade secrets, as prohibited by the DTSA, because she knowingly acquired them by improper means, *i.e.*, she accessed files in a manner she knew to be prohibited by Kroll. Kroll's investigation of this conduct, which is ongoing, has identified instances of this misappropriation by Defendant, as described above.

39.     Accordingly, Kroll requests that this Court enter an order permanently enjoining Povinelli from using any Kroll confidential information, and from disclosing Kroll confidential information to anyone not authorized to receive the confidential information.

40.     Kroll also requests that this Court enter an order requiring Povinelli to return any and all Kroll confidential information to Kroll, as provided by 18 U.S.C. § 1836(3)(A)(ii).

41.     Kroll further requests an award of compensatory damages under 18 U.S.C. § 1836(3)(B), exemplary damages under 18 U.S.C. § 1836(3)(C), because Povinelli's misappropriation of Kroll's trade secrets was willful and malicious.

**<u>SECOND CAUSE OF ACTION</u>**
**Misappropriation of Confidential Information and Trade Secrets, New York Common Law**

42.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

43.     During the course of her employment at Kroll and in order to perform her duties on behalf of Kroll, Povinelli was granted access to Kroll's confidential and proprietary information.

44.     Povinelli had access to Kroll's financial information, business information, plans and strategies, forecasts, know-how, systems, processes, models and strategies, and client information.

45.     This information is not available to the general public and is closely guarded by Kroll. Kroll keeps such information strictly confidential in order to maintain an advantage in the highly competitive and highly sensitive investigations and risk assessment industry.

ACTIVE 695962582v2

46.     This information is considered a trade secret under New York state law because Kroll derives an advantage over its competitors from the information, the information is not known outside of Kroll, Kroll has expended considerable amounts of money in developing the information, the information derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

47.     This information has been continually used in Kroll's business and is currently being used in Kroll's business.

48.     The economic value of Kroll's trade secrets and confidential information Povinelli had access to is substantial.

49.     The emails sent by Povinelli to her personal email account contain information which constitutes protectable trade secrets under New York law.

50.     Defendant had regular access to the trade secrets and confidential information throughout the course of her employment with Kroll. Defendant knows of the confidentiality, ownership, and use restrictions on the trade secrets and confidential information.

51.     Kroll has taken reasonable steps to maintain the secrecy of its trade secrets and confidential information, as described above.

52.     Povinelli misappropriated Kroll's trade secrets by sending confidential information to her personal devices and platforms, including but not limited to her personal email address on at least two separate occasions, in breach of her confidentiality obligations set forth in Kroll's Confidentiality Policy and Use Policy and Kroll procedures.

53.     Under New York state law, this Court may grant injunctive relief to prevent any actual or threatened misappropriation of trade secrets.

ACTIVE 695962582v2

54.     There has been an actual misappropriation of Kroll's trade secrets by Povinelli because she used them by sending highly sensitive Kroll information and trade secrets to her personal email account in direct violation of Kroll's Confidentiality Policy and Use Policy and Kroll procedures.

55.     Other than through Defendant's improper disclosure, the confidential information and trade secrets are not known to others and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

56.     Defendant's current and continued misappropriation of Kroll's trade secrets and confidential information is reckless and malicious. Defendant knows of the confidentiality, ownership, and use restrictions on the trade secrets and confidential information.

57.     By reason of the above-alleged acts and conduct of Defendants, Kroll has been damaged, and it will continue to suffer great and irreparable harm and damage.

58.     Kroll requests that this Court enter an order permanently enjoining Povinelli from using any Kroll confidential information, and from disclosing Kroll confidential information to anyone not authorized to receive the confidential information. Kroll also requests that this Court enter an order requiring Povinelli to return any and all Kroll confidential information to Kroll.

59.     Kroll is also entitled to recover compensatory damages from Defendant, including but not limited to the losses resulting from her wrongful conduct and any unjust enrichment caused by her misappropriation.

**THIRD CAUSE OF ACTION**
**Breach of Fiduciary Duty**

60.     Kroll repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

61.     At all relevant times, Povinelli had a fiduciary relationship with Plaintiff due to her obligations as a Managing Director at Kroll.

62.     Under the laws of New York, Povinelli owed a duty of good faith not to use Kroll's trade secrets for her personal benefit and not to disclose the confidential and proprietary information during and after separation of her employment.

63.     Povinelli breached her duties to Kroll by sending Kroll's confidential and proprietary trade secrets to her personal email account beginning in September 2023.

64.     Povinelli's breaches of her duties to Kroll harmed Kroll by placing Kroll's most confidential and proprietary trade secret information at risk of disclosure to the public and/or Kroll's competitors. The disclosure of Kroll's confidential and proprietary trade secrets to the public or its competitors would allow Kroll's competitors to unfairly compete with it and destroy the commercial value of any such models. Specifically, in the highly competitive industry in which Kroll operates, the disclosure of client information and proprietary Kroll templates would allow a competitor to unfairly compete with Kroll.

**WHEREFORE**, Kroll seeks judgment in its favor and an Order against Defendant that grants the following relief:

A.     Preliminarily and permanently enjoins Defendant, and all parties in active concert or participation with her, from using or disclosing any of Kroll's confidential, proprietary and/or trade secret information for any purpose;

B.     Preliminarily and permanently enjoins Defendant, and all parties in active concert or participation with her, from communicating with, contacting, soliciting or moving the business of any current Kroll customer;

C.     Orders Defendant and all parties in active concert or participation with them to return to Kroll all originals and copies of Kroll's confidential, trade secret and proprietary information, and any other files, devices and/or documents that contain or relate to Kroll's

ACTIVE 695962582v2

confidential and proprietary information, including without limitation, all computers, electronic media, PDAs and electric storage devices;

D.   Awards Kroll actual, incidental, compensatory, and consequential damages to be proven at trial, including diminution in the value of Kroll's business resulting from Defendant's illegal activities and costs and attorneys' fees;

E.   Awards Kroll exemplary or punitive damages in an amount to be proven at trial due to Defendant's willful and malicious activities;

F.   Awards Kroll such further relief as the Court deems necessary and just.


Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By:   */s/ Michael J. Slocum*
Robert H. Bernstein, Esq. (*Pro Hac Vice Forthcoming*)
Michael J. Slocum, Esq.
Pamela A. White, Esq.

500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
*973.360.7900*

*Attorneys for Plaintiff*

DATED: March 15, 2024