UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KROLL LLC, Plaintiff, | | 24-CV-01977 (JAV) |
| -v- | | <u>OPINION AND ORDER</u> |
| ANNA POVINELLI, Defendant. | | |

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Kroll LLC ("Plaintiff" or "Kroll") brings this suit asserting claims for violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, misappropriation of trade secrets under New York common law, and breach of fiduciary duty by Defendant Anna Povinelli ("Defendant"). *See* ECF No. 1 ("Complaint") at 9-12. Before the Court is Kroll's motion for summary judgment. ECF No. 44. For the reasons that follow, the motion is DENIED.

## BACKGROUND

### A. Local Rule 56.1 Statement

The Court begins by addressing Defendant's deficient response to Plaintiff's Local Rule 56.1 statement (ECF No. 44-10) ("Pl. 56.1 Stmt."). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

167 (2009). The rule demands that "any motion for summary judgment . . . be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). "Each statement denying and controverting any statement of material fact[] must be followed by *citation to evidence* that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d) (emphasis added). Any statements of material facts set forth by the moving party "will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c).

Defendant's response to Plaintiff's Local Rule 56.1 Statement, ECF No. 51 at 1-3 ("Def. 56.1 Reply"), fails to comport with the local rules. Defendant attempts to controvert certain of Plaintiff's Rule 56.1 statements with denials of knowledge or information. *See* Def. 56.1 Reply, ¶¶ 10, 11, 14, 15, 19-23. Defendant cannot "raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information[,] in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06-CV-02142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (cleaned up). Defendant's unsupported denials thus fail to controvert Kroll's statements and cannot create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]"). The Court therefore deems paragraphs 10, 11, 14, 15, and 19-23 of Defendant's 56.1 Reply to be admissions.

**B. Factual Background**

Unless otherwise noted, the facts are undisputed. Kroll is a "corporate investigations and risk and financial consulting" business. Pl. 56.1 Stmt., ¶ 1. Defendant served as Managing Director in Kroll's Financial Services Compliance and Regulation ("FSCR") service line. Pl. 56.1 Stmt., ¶¶ 2, 4; Def. 56.1 Reply, ¶ 4. In this role, she supervised a team of roughly fifty employees located across the United States and Mumbai. Pl. 56.1 Stmt., ¶ 5; Def. 56.1 Reply, ¶ 5. This team focused on compliance support and assistance with client projects. Pl. 56.1 Stmt., ¶ 5; Def. 56.1 Reply, ¶ 5. Defendant's superior was Nicolas Inman ("Inman"), Global Head of Compliance Consulting. Pl. 56.1 Stmt., ¶ 6; Def. 56.1 Reply, ¶ 6.

Kroll's FSCR team has access to highly sensitive, confidential and proprietary information in connection with performing their work. Pl. 56.1 Stmt., ¶ 7; Def. 56.1 Reply, ¶ 7. All members of the FSCR team are obliged to follow several policies to keep both Kroll and Kroll's clients' information confidential. Pl. 56.1 Stmt., ¶ 8; Def. 56.1 Reply, ¶ 8. These policies include Kroll's Confidentiality Policy, Pl. 56.1 Stmt., ¶ 11, and its Acceptable Use of Assets Policy, *id.*, ¶ 14. Under the latter, Kroll employees are forbidden to "create, send, receive, or store Kroll information" on personal non-Kroll email services. *Id.*, ¶ 15. All Kroll employees,

which included Defendant, receive annual training on the importance of each policy. *Id.*, ¶ 16; Def. 56.1 Reply, ¶ 16.

In early 2024, Kroll's Information Security team launched an investigation into suspicions that Defendant had violated Kroll's policies in connection with looking for a job elsewhere. Pl. 56.1 Stmt., ¶ 22. Kroll discovered that since September 2023 Defendant had sent more than 60 documents from her Kroll email account to her personal email address. *Id.*, ¶ 23. Although these documents included confidential Kroll information, *id.*, ¶¶ 24, 39; Def. 56.1 Reply, ¶¶ 24, 39, the parties do not agree whether all the documents were confidential, ECF No. 51 at 3-5 ("Def. Add'l 56.1 Stmt."), ¶ 11; ECF No. 53 ("Pl. 56.1 Reply"), ¶ 11, nor do they agree which documents, if any, were the non-confidential documents, *compare* ECF No. 49 ("Povinelli Decl."), ¶ 43, *with* ECF No. 44-7 ("Bernstein Decl."), ¶ 10.

Defendant's motive for emailing herself the documents is disputed. Defendant maintains that she did it to manage repeated difficulties with Kroll's IT system, that the only purpose of forwarding the documents was to accomplish Kroll work tasks while employed by Kroll, and that she never used the documents for any other purpose. Povinelli Decl., ¶¶ 37-42, 47.

Kroll points to no evidence that Defendant shared the forwarded documents with any third party or used the forwarded documents for any purpose other than to perform her work duties with Kroll. Instead, Kroll cites a declaration from Inman, Pl. 56.1 Reply, ¶¶ 12-14, stating that Defendant had "no legitimate business purpose for sending these documents to her personal email address." ECF No. 8

("Inman Decl."), ¶ 14.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. a*t 249-50 (citations omitted).

The moving party bears the initial burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). The movant may satisfy this burden by "submitting evidence that negates an essential element of the [nonmovant's] claim" or by "demonstrating that the [nonmovant's] evidence is insufficient to establish an essential element of the [nonmovant's] claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]here the movant fails to fulfill its initial burden of providing

admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up).

Parties must support assertions that a fact is or is not genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). Courts must "disregard conclusory denials that lack citations to admissible evidence." *Barahona v. Hebrew Acad. of the Five Towns & Rockaway*, 825 F. Supp. 3d 124, 131 (E.D.N.Y. 2026) (citation omitted). Courts are further "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted).

## DISCUSSION

Genuine issues of material fact preclude a grant of summary judgment to Kroll on its DTSA and common law trade secret claims. Additionally, Kroll has failed to adduce any evidence of damages, an element of its claims for a breach of fiduciary duty. Accordingly, Kroll's motion for summary judgment is denied.

### A. DTSA Claim

Under 18 U.S.C. § 1836, the "owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a

product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Thus, there are two elements to DTSA civil claims. First, a plaintiff must own a trade secret as that term is defined in the statute, and second, the trade secret must have been misappropriated. *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384-85 (S.D.N.Y. 2023). Since the parties dispute whether the information at issue was misappropriated within the meaning of the DTSA, the motion for summary judgment on the DTSA claim fails.

The DTSA defines "misappropriation" to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. *AUA Private Equity Partners, LLC v. Soto*, No. 17-CV-08035 (GHW), 2018 WL 1684339 at *4 (SDNY April 5, 2018) (quoting 18 U.S.C. § 1839(5)). Accordingly, there are three different ways to misappropriate a trade secret within the meaning of Section 1836: (1) acquisition; (2) disclosure; and (3) use. *See, e.g.*, *id.* Kroll claims that Defendant misappropriated its trade secrets through acquisition, Pl. Mem. at 10-11, and through use, *id.* at 11-12. Kroll's motion for summary judgment fails under either theory.

**1. Acquisition by Improper Means**

Misappropriation through acquisition is defined by statute as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A). "[I]mproper

means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A).

There is no dispute that Defendant acquired the information in question by sending it to her personal email account. *See AUA Private Equity Partners*, 2018 WL 1684339 at *5-*6 (discussing plain meaning, interpretative caselaw, and legislative history of "acquisition" under the DTSA). Yet there is a genuine issue as to whether Defendant did so by improper means. The list of improper means found at Section 1839(6)(A) is illustrative but not exhaustive. Here, Defendant acquired the information at issue in contravention of an internal policy prohibiting the electronic transfer of information to personal devices or storage. Kroll urges that this is sufficient to meet the statutory requirement. ECF No. 44-2 ("Pl. Mem.") at 10-11.

"The terms in the DTSA's definition of improper means make clear that the conduct requires a level of impropriety that merely accessing or downloading documents onto a personal device does not implicate." *MSIG Holdings (U.S.A.), Inc. v. Pye*, No. 25-CV-08071 (JLR), 2026 WL 1831172, at *4 (S.D.N.Y. June 25, 2026) (cleaned up). "Plaintiff would have this Court find that merely transferring information containing trade secrets to a personal device is sufficient to plead a DTSA claim. The DTSA, while a broad statute, is not so sweeping." *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024) (citation omitted). Transferring trade secrets to a personal account in contravention of an internal confidentiality

policy can constitute acquisition by improper means only when the employee transferred the information "for an improper or illegitimate purpose." *eShares,* 727 F. Supp. 3d at 494 (collecting cases); *see also AUA Private Equity Partners*, 2018 WL 1684339 at *6 (an employee misappropriates a trade secret when it is acquired "for purposes other than serving the interests of his employer." (cleaned up)).

Whether Defendant transferred the information for an improper or illegitimate purpose is controverted. Defendant attests that the "only purpose of forwarding the documents [to her personal email address] . . . was to accomplish Kroll work tasks while employed by Kroll," Def. Add'l 56.1 Stmt., ¶ 13, *accord* Povinelli Decl., ¶¶ 37-42, and that she "never utilized the[] documents for anything other than Kroll business," *id.*, ¶ 47. This dispute precludes summary judgment as to whether Defendant acquired the information through improper means.

**2. Misappropriation by Use**

The DTSA does not define the term "use." Accordingly, courts in this District have routinely looked to the definition of "use" set forth in the Restatement (Third) of Unfair Competition. *See KCG Holdings, Inc. v. Khandekar*, No. 17-CV-03533 (AJN), 2020 WL 1189302, at *12 (S.D.N.Y. Mar. 12, 2020) (collecting cases).

> The Restatement provides: '[t]here are no technical limitations on the nature of the conduct that constitutes 'use' of a trade secret . . . As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'"

*Id.* (quoting Restatement (Third) of Unfair Competition § 40 cmt. c).

There is a genuine issue of fact as to whether Defendant used the materials

sent to her personal account for any purpose other than to benefit her employer. Plaintiff argues that even this "use" of its trade secrets is sufficient to establish a violation of the DTSA. ECF No. 52 ("Reply") at 8-9. Yet an employee who uses the employer's trade secret to accomplish tasks assigned to her by that same employer and for the benefit of that employer has not misappropriated a trade secret within the meaning of the DTSA. *Cf. Better Holdco*, 666 F. Supp. 3d at 390 (holding that a former employee was liable for misappropriation where he used trade secrets for benefit of *new* employer).

**B. Misappropriation**

"The elements for a misappropriation claim under New York law are fundamentally the same" as under the DTSA. *Iacovacci v. Brevet Holdings, LLC,* 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020). A plaintiff claiming misappropriation of trade secrets under New York law must demonstrate: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999). *See also Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 690 (1st Dep't 2015) (quoting *North Atl.*, 188 F.3d at 43-44).

The Court considers that "use[]" in a New York law misappropriation claim has the same definition as under the DTSA; and that "discovery by improper means" has the same (or possibly a narrower) meaning than "acqui[sition] by improper means." 18 U.S.C. § 1839(5)(A). Thus, for the reasons given above, Kroll

has failed to demonstrate on the undisputed facts that Defendant misappropriated its trade secrets under New York common law. Its motion for summary judgment on this claim is denied.

### C. Breach of Fiduciary Duty

To succeed on a breach of fiduciary duty claim under New York law, plaintiffs must show "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). Kroll has not put forward any evidence of damages that it incurred as a result of Defendant's conduct. Pl. 56.1 Reply, ¶ 16. Kroll argues that damages are not a required element of a DTSA misappropriation claim. *Id.*; Reply at 9. Whilst that argument is correct, damages *are* a required element of a breach of fiduciary duty claim. Accordingly, Kroll's motion for summary judgment on this claim is denied. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 591 F. Supp. 2d 586, 589-590 (S.D.N.Y. 2008).

## CONCLUSION

Accordingly, Plaintiff's motion for summary judgment is **DENIED**.

The Clerk of Court is directed to terminate ECF No. 44.

SO ORDERED.

Dated: September 22, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge